DAUTEN v MUSKEGON COUNTY

Docket No. 62769. Submitted April 7, 1983, at Grand Rapids.—Decided August 31, 1983.

Alvina Dauten brought an action in Muskegon Circuit Court against the County of Muskegon alleging that the county's refusal to hire her as a lifeguard because of a back condition was a violation of the provisions of the Handicappers' Civil Rights Act. Following a nonjury trial, Ronald H. Pannucci, J., entered a judgment of no cause of action, finding that the testimony of the county's doctor established that her back condition might result in back spasms which might endanger plaintiff or the public in life-saving situations and, accordingly, the handicap was related to plaintiff's ability to perform the duties of the job. Plaintiff appeals. *Held:*

1. The medical testimony established that plaintiff's back condition might result in back spasms when confronted with a life-saving situation which in turn might endanger the lives of both plaintiff and the person plaintiff was trying to save. The danger to the public establishes a basis to find that the handicap was related to plaintiff's ability to perform the duties of the job. Under such circumstances, the defendant's refusal to hire plaintiff was not a violation of the plaintiff's civil rights.

2. Since the testimony of the medical witness was clear and convincing, it was not error for the trial court to rely on that testimony.

Affirmed.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT.

An employer may properly refuse to hire as a lifeguard a person with a back condition which might result in muscle spasms

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Rights §§ 248.5, 290 *et seq.*

Actions, under 42 USCS § 1983, for violations of federal statutes pertaining to rights of handicapped persons. 63 ALR Fed 215.

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 393.

[2] 5 Am Jur 2d, Appeal and Error §§ 831, 884.

81 Am Jur 2d, Witnesses §§ 139, 140.

during life-saving situations without being in violation of the provisions of the Handicappers' Civil Rights Act, since the handicap is one which is related to the individual's ability to perform the job (MCL 37.1202[1]; MSA 3.550[202][1]).

2. WITNESSES — CREDIBILITY OF WITNESSES — BENCH TRIAL — APPEAL.
The Court of Appeals gives great weight to the assessment of the credibility of witnesses of a trial judge sitting as the trier of fact (GCR 1963, 517.1).

*Norman C. Halbower, P.C.* (by *James K. Oslund*), for plaintiff.

*Knudsen, Wasirua & Associates, P.C.* (by *Harry J. Knudsen*), for defendant.

Before: BEASLEY, P.J., and R. B. BURNS and T. C. MEGARGLE,* JJ.

PER CURIAM. After a nonjury trial, plaintiff appeals as of right from a judgment of no cause of action on her claim for damages and injunctive relief based on an alleged violation of MCL 37.1202(1); MSA 3.550(202)(1). This provision of the Handicappers' Civil Rights Act states in part that:

"An employer shall not:
"(a) Fail or refuse to hire, recruit or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position."

This lawsuit arose after the defendant denied plaintiff's application for employment as a lifeguard based on the recommendation of its examining physician. On appeal, plaintiff first challenges the trial court's interpretation of the statutory provision we have quoted above. In an opinion delivered from the bench, the trial judge found:

* Circuit judge, sitting on the Court of Appeals by assignment.

"The court finds that the county made the decision after the medical opinion was given to them that the doctor would not recommend her for the position because the position does require some lifting; further, because of the potential—albeit I find it hard to believe that we could be too worried, dealing with these kids in shallow water—but let's not overlook the reality of things. Counties are worried about liability for death of people who are under their supervision and control. They are worried about death and injury to their employees. They are worried about a lot of things.

"The court doesn't feel that this was an unreasonable choice, given the fact of this woman's injury and the very large potential of a problem which could occur, although there is no evidence to indicate that she has had any prior back spasms. In fact, I don't even think she's ever even had a cramp."

Plaintiff claims that the phrase "the individual's ability to perform the duties of a particular job or position" cannot be interpreted to include the individual's propensity toward injury while performing those duties. Defendant argues that the trial judge correctly found that the potential for injury to one's self and others was related to an applicant's ability to perform the duties of a lifeguard.

After applying for a position as a lifeguard, plaintiff was given a physical examination. She disclosed that she had injured her back in two separate automobile accidents and was being treated by a chiropractor for a mild scoliosis. Defendant's examining physician, who testified at trial, recommended against hiring plaintiff because of her back problems. At trial, defendant's examining physician testified that scoliosis, lateral curvature of the spine, is a structural defect in the back. Physical stress, such as heavy lifting, could result in muscle spasms in the back. He also testified

that a lifeguard would be under significant stress in a life-saving situation. She would be prone to back spasms in such a situation. These spasms might render the person suffering them "ineffective", *i.e.,* without control of her muscular movements. Spasms of this type suffered in a real life-saving situation would endanger the lives of the lifeguard and the person he or she was trying to save.

We cannot agree with plaintiff's interpretation of the Handicappers' Civil Rights Act. We need not consider the danger to plaintiff herself to sustain the decision of the trial court. Dr. Fugate, who testified both as defendant's examining physician and as an expert, stated that plaintiff's condition could result in spasms causing a loss of physical control in a life-saving situation. Even if a lifeguard never has to attempt to save a life, her ability to do so is still perhaps the most important factor to be considered in making a decision to hire. A physically determinable characteristic which may disable a lifeguard in a life-saving situation is a handicap that is related to the applicant's "ability to perform the duties of a particular job".

On appeal, plaintiff attacks the trial court's decision to rely on the "opinion of one doctor" instead of the opinions of the witnesses presented by her. We normally give great regard to the assessment of credibility of the trial judge sitting as trier of fact. See GCR 1963, 517.1. We have reviewed the entire record in this case, especially the direct and cross-examination of Dr. Fugate. We find no merit in plaintiff's claim. Dr. Fugate's testimony was both clear and convincing in the face of wide-ranging and sometimes heated cross-

examination. In its central points, it was essentially unrefuted. It was not clear error to rely on this testimony.

Affirmed. No costs, a public question.