CARR v GENERAL MOTORS CORPORATION

Docket No. 74825. Argued February 6, 1986 (Calendar No. 7). Decided
July 8, 1986. Rehearing denied 426 Mich 1231.

James M. Carr brought an action in the Wayne Circuit Court
against General Motors Corporation, his employer, alleging
that General Motors' failure to approve his request for a
transfer to a different position on the ground that the position
would require him to undertake lifting in excess of a medical
restriction amounted to discrimination within the meaning of
the Handicappers' Civil Rights Act. The court, Robert J. Co-
lombo, J., granted summary judgment for the defendant, stat-
ing that the plaintiff had failed to state a cause of action under
the act. The Court of Appeals, ALLEN, P.J., and KAUFMAN, J.
(V. J. BRENNAN, J., dissenting), reversed in an opinion per
curiam, holding that a handicap need not be unrelated to
ability to perform the duties of a job in order to be covered under
the Handicappers' Civil Rights Act (Docket No. 71203). The
defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice
WILLIAMS and Justices BRICKLEY, CAVANAGH, RILEY, and
ARCHER, the Supreme Court held:

A disability that is related to a person's ability to perform
the duties of a particular job is not a handicap within the
meaning of the Handicappers' Civil Rights Act.

1. The Legislature intended that only persons whose disabil-
ity is unrelated to ability to perform a job are covered by the
Handicappers' Civil Rights Act. The act plainly provides that
an employer may not fail or refuse to hire, recruit, or promote
a person because of a handicap that is unrelated to the individ-
ual's ability to perform the duties of a particular job or posi-
tion. Where a handicapped person meets the qualifications of a
job, the same opportunity to secure the position must be
afforded as would be afforded other applicants.

2. In this case, the plaintiff's physical handicap resulted in a

REFERENCES

Am Jur 2d, Civil Rights §§ 247 et seq.
Construction and effect of state legislation forbidding job discrimi-
nation on account of physical handicap. 90 ALR3d 393.

medically imposed lifting restriction, and the position which the plaintiff sought required the plaintiff to lift in excess of the restriction. The handicap thus was related to his ability to perform the job for which he was denied transfer.

Reversed.

Justice LEVIN, writing separately, stated that the cause should be remanded to the trial court to determine whether the plaintiff's handicap can be accommodated without undue hardship to the employer.

An employer has a duty under the Handicappers' Civil Rights Act to accommodate a handicapped worker unless the accommodation would impose an undue hardship. An employer may not fail or refuse to hire, recruit, or promote a worker where adaptive devices or aids may be utilized to enable the worker to perform the specific requirements of the job or because of a handicap that is unrelated to the worker's ability to perform the essential duties of a particular job. Activities that are not integral to a job and which could be performed by other workers should be accommodated.

Through accommodation regarding peripheral requirements, handicaps and jobs become "unrelated" although they might otherwise be related. If the statutory obligation to accommodate is not so read, those afflicted by handicaps related at least peripherally to every job would be left unprotected even if the handicappers would be perfectly capable of doing the job if peripheral responsibilities were transferred to another employee without undue hardship to the employer. Accommodation does not mean requiring less work from handicapped employees. Some peripheral responsibilities may be transferred from handicapped employees, while others could be transferred to handicapped employees. Identical treatment of handicapped and nonhandicapped workers may be a source of discrimination, whereas different treatment of handicapped workers may eliminate discrimination and open employment opportunities.

If there is no duty to accommodate a worker unless the handicap is totally unrelated to the ability to perform the duties of the position, accommodation is essentially limited to modifying the physical environment in which the job is done. Adoption of this interpretation of the duty to accommodate would mean that the legislative purpose in enacting the Handicappers' Civil Rights Act was primarily to amend preexisting legislation governing barrier-free building construction.

135 Mich App 226; 353 NW2d 489 (1984) reversed.

OPINION OF THE COURT

1. CIVIL RIGHTS — HANDICAPPED WORKERS — EMPLOYMENT DISCRIMI-
   NATION.

   A disability that is related to a person's ability to perform the
   duties of a particular job is not a handicap within the meaning
   of the Handicappers' Civil Rights Act (MCL 37.1103; MSA
   3.550[103]).

SEPARATE OPINION BY LEVIN, J.

2. CIVIL RIGHTS — HANDICAPPED WORKERS — ACCOMMODATION.

   *An employer has a duty to accommodate a handicapped worker
   unless the accommodation would impose an undue hardship
   (MCL 37.1102, 37.1202; MSA 3.550[102], 3.550[202]).*

3. CIVIL RIGHTS — HANDICAPPED WORKERS — ACCOMMODATION.

   *An employer may not fail or refuse to hire, recruit, or promote a
   worker because of a handicap that is unrelated to the worker's
   ability to perform the duties of a particular job, or where
   adaptive devices or aids may be utilized to enable the worker to
   perform the specific requirements of the job, unless the em-
   ployer demonstrates that the accommodation would impose an
   undue hardship (MCL 37.1202; MSA 3.550[202]).*

*Dennis M. Flessland* and *Peter L. Conway, P.C.,*
for the plaintiff.

*Francis S. Jaworski (Edmond J. Dilworth, Jr.,*
and *Drema M. Kopcak,* of counsel) for the defen-
dant.

Amicus Curiae:

*The Fishman Group* (by *Steven J. Fishman* and
*Malcolm D. Brown*) for Michigan State Chamber of
Commerce.

BOYLE, J. The question presented to the Court in
this case is whether a disability that is related to
one's ability to perform the duties of a particular
position is a "handicap" within the meaning of
the Handicappers' Civil Rights Act (HCRA), MCL
37.1101 *et seq.;* MSA 3.550(101) *et seq.* For the
reasons which follow, we find that the clear legis-
lative intent was that only those whose disability

is unrelated to ability to perform the job be covered by the HCRA, and we therefore reverse the decision of the Court of Appeals and reinstate the trial court grant of summary judgment.

On September 1, 1981, plaintiff James Carr filed a complaint in Wayne Circuit Court, alleging that, in violation of the HCRA, he was discriminated against by his employer, defendant General Motors, because of a handicap. The trial court granted summary judgment for the defendant on the ground that plaintiff had "failed to state a cause of action under the Handicappers' Civil Rights Act" because the handicap which plaintiff claimed to have was not a "handicap" as defined by the HCRA.

The plaintiff appealed to the Court of Appeals which reversed the decision of the lower court and remanded the case for a trial on the merits. The Court of Appeals opined that a handicap need not be unrelated to ability to perform the duties of a job in order to be covered by the HCRA. Defendant appealed the decision to this Court which granted leave to appeal.

The facts in this case are uncontested. Plaintiff began his employment with General Motors as a specialized clerk on June 6, 1963. On August 3, 1972, he underwent back surgery for a ruptured disk, and, as a result, both plaintiff's physician and the General Motors' doctor placed medical restrictions on plaintiff. At all times relevant to the instant case, he was prohibited from lifting in excess of fifty pounds.

On November 30, 1974, plaintiff was laid off due to a reduction in the work force, but continued to hold two different temporary salaried positions at General Motors until April 27, 1976. On that date, he was recalled to a regular salaried position as an associate analyst, a position he held for three

years until he requested a transfer to the dimensions group. It is uncontested that the job to which plaintiff requested transfer requires lifting in excess of his medical restriction. General Motors denied the requested transfer, and it is this denial which forms the basis of the lawsuit.

Our decision in this case requires us to analyze the HCRA and to determine the legislative intent in its enactment. In so doing, it is not within the province of this Court to determine whether or not more rights could or should have been given to the handicapped or to whom these rights should be granted. Rather, it is our proper task to give full effect to the legislation as it was intended to be applied and to determine that intent on the basis of the available evidence.

Statutory analysis necessarily begins with the wording of the statute itself. Section 202 of the HCRA, first enacted in 1976, provides in pertinent part:

> An employer shall not:
> (a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

In addition, § 103 defines "handicap" for purposes of the HCRA:

> (b) "Handicap" means a determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic:
> (i) For purposes of article 2, [§§ 201 to 208] is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion.

A cardinal principle of statutory construction is that where the Legislature has defined a word or term in an act, a court is bound by that definition. We reiterated this precept in *Erlandson v Genesee Co Employees Retirement Comm*, 337 Mich 195, 204; 59 NW2d 389 (1953) (quoting 50 Am Jur, §§ 261, 262, pp 253-254):

> It is within the legislative power to define the sense in which words are employed in a statute.
>
> A statutory definition supersedes the commonly-accepted, dictionary, or judicial definition. Where an act passed by the legislature embodies a definition it is binding on the courts.

Despite the plain language of the statutory definition, plaintiff submits that there is an inherent ambiguity because, to read the act as only requiring accommodation when the handicap is unrelated to the duties of the job, would render it meaningless. Quoting the Court of Appeals decision in *Wardlow v Great Lakes Express Co*, 128 Mich App 54, 61; 399 NW2d 670 (1983), plaintiff concludes:

> If we were to accept defendant's arguments, the act would be practically meaningless. MCL 37.1102; MSA 3.550(102) requires accommodation. However, if we ruled that an employer need not accommodate whenever the handicap is related in any way to the job, we would be ruling that the employer need accommodate only if the handicap is not related to the work. Of course, in that situation, no accommodation is needed in the first place. In other words, defendant's interpretation requires accommodation only when no accommodation is needed.

We find that the Court of Appeals in this case and in *Wardlow, supra,* has misconstrued the Legislature's intent. The House Legislative Analyses,

at the time of the passage of the HCRA, identified
for the legislators:

> The Apparent Problems to Which the Bill Ad-
> dresses Itself:
> Although Michigan law offers protection in most
> situations from discrimination based on race,
> color, religion, national origin, and sex, and in
> some situations from discrimination based on age
> and marital status, existing law offers handicap-
> pers [sic, less?] than for others. Traditional atti-
> tudes often work against handicappers even
> though they are perfectly capable of performing
> the jobs for which they apply. [House Analysis, SB
> 749, July 27, 1976.]

Senator Faust, speaking on the Senate floor,
reiterated the intent of the act:

> The bill essentially spells out the above areas of
> civil rights, now guaranteed to all, and applies
> them with equal force under the law to this new
> category. Handicapped persons wish to, and, when
> the legislation is enacted into law, must be judged
> and accepted based on their ability.
>
> \* \* \*
>
> Businesses and public facilities will not be re-
> quired to go to undue lengths to make facilities
> more convenient for handicapped individuals.
> However, if a handicapped person seeking employ-
> ment meets the qualifications of the job and can
> attain the performance levels required within a
> reasonable time, he must, by law be given the
> same opportunity as other applicants to secure the
> position. [1976 Senate Journal 590.]

Senator Faust's comments and the analyses evi-
dence a clear legislative desire to ensure that
handicappers are treated like all others, i.e.,
judged and accepted on the basis of their abilities.
This reinforces the clear language of the statute
which states continuously throughout its provi-

sions that the handicap must be "unrelated to ability to perform."[1]

Plaintiff claims and the Court of Appeals held that the act is meaningless without accommodation *related* to ability to perform. Defendant directs this Court's attention to many types of accommodation which may be required under the HCRA which are unrelated to ability to perform. These include: modifying building architecture to include wheelchair ramps or platforms, widening doorways and bathroom stalls, providing raised door numbers for the blind, installing alternative warning devices for the deaf and blind, initiating outside interviewing and application procedures to make jobs more accessible, initiating alternative testing methods for handicapped individuals, and reassigning office and parking locations. We agree with defendant's contention that control of such barriers to equal employment is meaningful to handicapped individuals.

Additionally, plaintiff finds the language of § 102(2) of the HCRA controlling in this case. Section 102(2), added to the act in 1980, provides:

> A person shall accommodate a handicapper for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship.

It is plaintiff's contention that this additional provision evidences the Legislature's intent that handicaps related to ability to perform are to be

---

[1] We note that the HCRA, as first introduced into the Senate, did not include the phrase "unrelated to the individual's ability to perform the duties of a particular job or position" either in the definition of handicap or in the prohibition against discrimination in employment. This language was specifically added by amendment as the bill was being debated in the Senate.

accommodated. Defendants and amicus curiae, the Michigan State Chamber of Commerce, point out that the term handicapper is to be interpreted according to the definition provided by the Legislature.

We agree with defendants that § 102(2) is not in conflict with the other provisions of the HCRA and that a substitution of the word "handicapper" for its glossary definition shows that, again, the Legislature is reiterating its intent to only protect handicaps which are unrelated to ability to perform the duties of the job. We further find that the Legislature's intent in adopting this provision was to expand the number of parties who would be required to provide accommodation, not to change the type of handicap which must be accommodated.[2]

Plaintiff further claims, however, that it would be superfluous for the Legislature to enact the HCRA with the defendant's interpretation because the issues of physical barriers and barrier-free designs are addressed in other statutes.[3] We note, however, that there are many restrictions placed on the requirements in these other statutes and that many of the accommodations contemplated by the HCRA would not be covered by other statutory provisions.[4]

We find no room for speculation as to the proper interpretation of the HCRA. The Legislature has spoken clearly and has mandated, not just once, but many times throughout the HCRA, that the only handicaps covered by the act, for purposes of

[2] See House Analyses for HB 5110 Substitute H-2.

[3] MCL 125.1351 et seq.; MSA 3.447(121) et seq., MCL 125.1361; MSA 3.447(131).

[4] MCL 125.1352; MSA 3.447(122) provides, for example, that alterations need only be made to public facilities of which the contract for construction or the first contract for construction of a portion is made after July 2, 1974.

employment, are those unrelated to ability to perform the duties of the position. We are bound by that interpretation.

This decision is in accord with the interpretations given by most states of antidiscrimination statutes.

> Under state laws, an employer is generally permitted to decline employment to a handicapped person if it is shown that he cannot satisfactorily perform, at the standards set by the employer, the duties required by the job. [3 Larson, Employment Discrimination, § 108.20, p 22-82.]

See, e.g., *Brown Co v Labor & Industry Review Comm,* 124 Wis 2d 560; 369 NW2d 735 (1985); *Sommers v Iowa Civil Rights Comm,* 337 NW2d 470 (Iowa, 1983); *Montgomery Ward v Bureau of Labor,* 280 Or 163; 570 P2d 76 (1977).

In addition, the federal courts have interpreted the Rehabilitation Act, 29 USC 701 *et seq.,* to require that the handicapped person seeking employment be capable of performing the duties of the position in order to bring a claim for discrimination. Under the act, discrimination is prohibited against an "otherwise qualified handicapped individual" in programs or activities receiving federal financial assistance or any program or activity conducted by any executive agency or by the United States Postal Service.[5]

---

[5] This requires, as the Court of Appeals for the Eleventh Circuit articulated in *Treadwell v Alexander,* 707 F2d 473, 475 (CA 11, 1983), that

> [o]nce a plaintiff shows an employer denied him employment because of physical condition, the burden of persuasion shifts to the federal employer to show that the criteria used are job related and that plaintiff could not safely and efficiently perform the essentials of the job.

Plaintiff has admitted that his handicap is related to his ability to perform the duties of the position in the dimensions group into which he was denied transfer. The trial court was, therefore, correct in its grant of summary judgment for defendants, and its decision is affirmed. The decision of the Court of Appeals is reversed.[6]

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, RILEY, and ARCHER, JJ., concurred with BOYLE, J.

LEVIN, J. The question presented is the scope of the obligation to accommodate a disabled worker under the Handicappers' Civil Rights Act. The circuit court granted summary judgment for General Motors Corporation, concluding that there was no genuine issue as to any material fact. The Court of Appeals reversed; I would affirm the Court of Appeals. The cause should be remanded to the circuit court to determine whether James M. Carr's handicap can be accommodated without undue hardship to General Motors.

See also *Cook v United States Dep't of Labor,* 688 F2d 669, 670 (CA 9, 1982) ("These sections . . . protect only workers who, despite a handicap, remain qualified for their job."), *Prewitt v United States Postal Service,* 662 F2d 292 (CA 5, 1981), and *Stevens v Stubbs,* 576 F Supp 1409, 1415 (ND Ga, 1983) ("The handicap discrimination laws protect only 'qualified handicapped persons,' i.e., those who *can* do their job *'in spite of'* their handicaps, rather than those who *could* do the job *but for* their handicap").

[6] Our holding that this plaintiff, who concedes that he cannot perform the duties of a particular job and who claims that his employer must provide another employee to handle part of his duties, had not stated a claim upon which relief can be granted, necessarily precludes us from making any determination as to the proper interpretation of the term "reasonable accommodation" as used in the HCRA.

We note that plaintiff here has not alleged in his pleadings or to this Court that there are adaptive devices or aids which would enable this individual to perform the specific requirements of the job or that the fifty-pound weight lifting requirement is merely a pretext for discrimination against the handicapped.

I

Carr began working as a specialized clerk with General Motors in 1963. In 1972, he underwent back surgery for excision of a ruptured disc. As a result of the operation, doctors for both Carr and General Motors imposed a fifty-pound weight-lifting restriction. The weight-lifting restriction became an issue when General Motors offered and then denied Carr a position in the dimensions group engineering staff in 1979. The transfer was denied because of the weight-lifting restriction.

Carr concedes that one of the requirements for employment in the dimensions group was lifting objects in excess of fifty pounds. He contends, however, that "[m]ost of the Dimensions Group's activities did not involve activities which would require the plaintiff to exceed his weight lifting restrictions," and "[t]here were other employees in the defendant's Dimensions Group who were able to perform the lifting which exceeded the plaintiff's restrictions." He also suggested in the Court of Appeals that a jack or lift could be provided. Carr contends that General Motors could have accommodated his handicap in the dimensions group without undue hardship, and its refusal to do so was violative of the act.

The circuit court granted General Motors summary judgment motion on the ground that the act prohibited only discrimination on the basis of a handicap "unrelated" to the person's ability to perform the duties of a particular job, and Carr's handicap was related. The Court of Appeals reversed, finding a duty to accommodate without regard to whether the handicap was job-related, provided that the accommodation would not impose an undue hardship.

## II

The purpose of the Handicappers' Civil Rights Act, as stated at the outset of the act, is "to define the civil rights of individuals who have handicaps"[1] and "to prohibit discriminatory practices, policies, and customs in the exercise of those rights."[2] The act concerns discrimination in housing, real estate, public accommodations, public services, and education, as well as employment.

The act defines a handicap as meaning

a determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic:

(i) For purposes of . . . [employment], is unrelated to the individual's ability to perform the duties of a particular job or position . . . .[3]

Section 202 of the act provides that an employer shall not

(a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

(b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

* * *

(f) Fail or refuse to hire, recruit, or promote an individual when adaptive devices or aids may be

---

[1] MCL 37.1101 et seq.; MSA 3.550(101) et seq.
[2] Id.
[3] MCL 37.1103; MSA 3.550(103).

utilized thereby enabling that individual to perform the specific requirements of the job.[4]

The employer's duty to accommodate is set forth in § 102. Before it was amended, the accommodation provision read: "Nothing in this article [the section covering employment discrimination] shall be interpreted to exempt a person from the obligation to accommodate an employee or applicant with a handicap for employment unless the person demonstrates that the accommodation would impose an undue hardship in the conduct of the business."[5] In 1980, the duty to accommodate was extended beyond the employment context. Section 102 was amended to read: "A person shall accommodate a handicapper for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship."[6]

III

Neither the circuit court nor the Court of Appeals adverted to § 202(f), which prohibits an employer from discriminating against a person "when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job."[7] In his brief in the Court of Appeals, Carr suggested a lift or jack could have been provided to assist him in lifting objects exceeding his weight-lifting restriction. Whether such a lift or jack could be devised for the particular type of lifting involved was not focused upon in the summary judgment motion papers. If such a

---

[4] MCL 37.1202; MSA 3.550(202).

[5] MCL 37.1207; MSA 3.550(207).

[6] MCL 37.1102; MSA 3.550(102).

[7] MCL 37.1202(f); MSA 3.550(202)(f).

device can reasonably be provided, the act would seem to require that accommodation by General Motors.

## IV

General Motors construes the term handicap in § 103 and the duty of accommodation in § 102 narrowly. The handicap must be completely unrelated to the ability to perform the job. It contends that the Legislature did not distinguish between a handicap that relates to peripheral job responsibilities and a handicap that relates to essential job responsibilities; nor did it distinguish a handicap that rarely affects a peripheral responsibility from a handicap that regularly affects an essential function.

In the instant case, a responsibility of the dimensions group is indeed to place blocks of varying weights and sizes in automobiles to determine their interior volume. How often this is done and how often the blocks weigh more than fifty pounds does not appear in the summary judgment motion papers. Carr might have been called upon to lift fifty-pound weights all day long every day or only on the rarest occasions when another person was available to assist him. It might appear on a more complete record that even persons without weight-lifting restrictions assist each other in placing blocks of fifty pounds or more, either because of the bulk or weight of the blocks.

*Foods, Inc v Iowa Civil Rights Comm,* 318 NW2d 162 (Iowa, 1982), an Iowa Supreme Court decision interpreting a statutory provision similar to Michigan's corresponding provision, illustrates weaknesses in General Motors' narrow construction. The Iowa statute defines a handicap as a disability "unrelated to the person's ability to perform jobs

or positions which are available to him . . . ."[8]
The plaintiff was a cafeteria worker who suffered
from epilepsy. She periodically experienced petit
mal seizures and twice in three years had suffered
grand mal seizures in which she lost conscious-
ness. She was, however, "taking medication to
control the condition when . . .—after fourteen
months of satisfactory performance of her employ-
ment duties—she suffered a grand mal seizure
while on the job."[9] She was discharged three days
later.

The court observed that epilepsy is somewhat
related to every job, "since a convulsive seizure
such as the one that led to her firing would render
her . . . unable to discharge her duties, for a brief
period of time."[10] It is slightly related to any job
even if a seizure occurs once in fourteen months,
as it did in the *Foods* case, or even once a decade.
The Iowa court concluded it did "not believe such
a restrictive interpretation of rule 6.1 is justifi-
able."[11]

Epilepsy is not in this respect unique. There are
a number of handicaps that relate in some way to
a worker's ability to perform any job. Blindness
and deafness are but two examples.[12] As the Iowa
and other courts have found, however, handi-
capped workers can perform many jobs in a rea-
sonably competent and satisfactory manner if em-
ployers make appropriate accommodations.

Adoption of the view that there is no duty to
accommodate a worker unless the handicap is

---

[8] *Id.* at 165.

[9] *Id.* at 164.

[10] *Id.* at 167.

[11] *Id.*

[12] See, e.g., *Wardlow v Great Lakes Express Co,* 128 Mich App 54,
69; 339 NW2d 670 (1983) ("blindness affects to some extent practically
any job").

totally unrelated to the ability to perform the duties of the position would mean that accommodation is essentially limited to modifying the physical environment—buildings, elevators, bathrooms, desks—in which the job is done, and that the legislative purpose in enacting the Handicappers' Act was primarily to expand preexisting legislation governing barrier-free building construction.

The Legislature had previously addressed the issue of barrier-free construction in MCL 125.1351 *et seq.;* MSA 3.447(121) *et seq.,* which provides that certain facilities used by the public for the purposes of education, employment, housing, transportation, or recreation, must meet barrier-free design requirements to facilitate accessibility and utilization by physically limited persons. Barrier-free design, according to the act, means "those architectural designs which eliminate the type of barriers and hindrances that deter physically limited persons from having access to and free mobility in and around a building, structure, or improved area." MCL 125.1351; MSA 3.447(121).

If the legislative purpose in enacting the Handicappers' Act was primarily to deal with barrier-free construction, one would think the Legislature would have amended the earlier legislation directly.

Although MCL 125.1352; MSA 3.447(122) provides that alterations need only be made to public facilities of which the contract for construction or the "first contract for construction of a portion . . . is made *after* July 2, 1974" (emphasis supplied), the construction of the Handicappers' Act proposed by General Motors would modify this limitation.

General Motors relies on the following passage in the Legislative Service Bureau analysis of the Handicappers' Act: "Business and public facilities

will not be required to go to undue lengths to
make their facilities more convenient . . . ."[13] But
other passages in the Legislative Service Bureau
analysis suggest a different focus. "In recent years,
handicappers have made significant gains in con-
trolling architectural barriers. However, handicap-
pers still have little control over prejudicial barri-
ers. It has long been the goal of Michigan handi-
cappers to achieve total integration within soci-
ety."[14] It thus appears that the Legislature, aware
that progress had been made in removing architec-
tural barriers, sought to do more than enlarge the
scope of prior architectural barrier-free legislation.
It sought to remove other barriers so that handi-
cappers would be more successfully integrated into
society.

V

Construing the act to require accommodation
only if the handicap is totally unrelated to the
ability to perform the job means that the Legisla-
ture did not intend that accommodation would be
a means of making more jobs accessible to the
handicapped. The legislative purpose was merely
to provide a means of making more buildings and
bathrooms accessible to handicappers whose handi-
cap is in no way related to the job. Those handi-
cappers, like the blind and epileptic, who could
perform a variety of jobs with minimal accommo-
dation, would be left unprotected.

The Department of Civil Rights has ruled that
the obligation to accommodate may "include the
reassignment of certain peripheral duties to other

[13] See Brief of Defendant-Appellant at 9.
[14] House Legislative Analysis, SB 749, May 5, 1976.

employees."[15] The HEW has adopted the same test: A qualified handicapped person for the purposes of employment is one who "with reasonable accommodation, can perform the essential functions of the job in question."[16] Through accommodation, handicaps and jobs become "unrelated" although they might otherwise be related. The job and the handicap become unrelated through accommodation regarding peripheral requirements.

VI

The relationship between the duty to accommodate and the definition of handicap can be ex-

[15] See *Wardlow v Great Lakes Express Co,* n 12 supra at 69, quoting *Michigan Dep't of Civil Rights ex rel Elizabeth Dingler v General Motors* (No 37293-E1, decided October 23, 1979). In *Wardlow,* the Court of Appeals reversed a circuit court dismissal of a claim by a truck driver with a fifty-pound weight-lifting restriction who was denied a job that required some lifting in excess of this restriction. The Court said "no one has shown us just how integral this activity is to the job. If this activity is performed before the driver leaves on his run, one of the mechanics could plausibly do it." The Court ruled "that the act requires that the employer accommodate the employee for any handicap unless the employer shows that such accommodation will result in undue hardship."

[16] 45 CFR 84.3(k)(1). See also *Treadwell v Alexander,* 707 F2d 473, 477 (CA 11, 1983) ("A plaintiff who could perform the essentials of the job if afforded reasonable accommodation would be entitled to relief").

General Motors contends that "[i]n case after case, the court of appeals has held that to be protected by the HCRA, a person must be able to perform every duty of a particular job, whether it be safe use of an air mask, saving the life of a swimmer, safely driving a bus or a truck, or lifting heavy objects." The decisions cited, however, do not support General Motors' contention. In the case involving the air mask, *Shelby Twp Fire Dep't v Shields,* 115 Mich App 98; 320 NW2d 306 (1982), the Court stated: "[W]e wish to urge the commission to consider placing Shields on light duty in the event that the commission finds that Shields' handicap prevents him from performing the duties of a firefighter." *Id.* at 105. *Dauten v Muskegon Co,* 128 Mich App 435; 340 NW2d 117 (1983), found that the plaintiff's handicap created a risk of back spasms that could disable her in life-saving situations. Life saving is the essence of a lifeguard's job. It is not a peripheral responsibility. *Wardlow, supra,* clearly disallows discrimination on the basis of a weight-lifting restriction relating only to responsibilities that are not integral to the job of driving a truck.

pressed in different ways. A handicap that can be reasonably accommodated may be seen as being "unrelated" to the job. Alternatively, whether the handicap is related or unrelated is not controlling as long as the employer can accommodate the handicap without undue hardship. Whichever construction is adopted, the result is the same. If the handicap can be accommodated without undue hardship, the employer is obliged to accommodate.

### VII

Accommodation does not mean requiring less work from handicapped employees. While some peripheral responsibilities will be transferred *from* handicapped employees, others will be transferred *to* handicapped employees. "Identical treatment may be a source of discrimination in the case of the handicapped, whereas different treatment may eliminate discrimination against the handicapped and open the door to employment opportunities."[17]

The Iowa case of the epileptic cafeteria worker is illustrative. She primarily cleaned tables and washed dishes, while occasionally she worked on the serving line and operated the cash register and cafeteria equipment, including a grill and a deep fat fryer. Because her epilepsy created a risk when she worked the grill and fryer did not mean she would do less work if these responsibilities were transferred to others. She could have done more of the other tasks.[18]

### VIII

General Motors ultimately rests its case on the

---

[17] *Wardlow,* n 12 *supra* at 64, quoting *Holland v Boeing Co,* 90 Wash 2d 384, 388; 583 P2d 621 (1978).

[18] *Foods, supra* at 169.

asserted superiority of its literal reading of the statutory language.[19]

In *Southeastern Community College v Davis*, 442 US 397; 99 S Ct 2361; 60 L Ed 2d 980 (1979), the United States Supreme Court considered a United States Court of Appeals decision that had construed § 504 of the Rehabilitation Act of 1973, which proscribes discrimination against an "otherwise qualified handicapped individual."[20] The Court of Appeals had read this language as requiring a nursing school to "reconsider plaintiff's application for admission to the nursing program without regard to her hearing ability." 574 F2d 1158, 1160 (CA 4, 1978). The United States Supreme Court reversed the Court of Appeals literal construction of the statute. "Taken literally, this holding would prevent an institution from taking into account any limitation resulting from the handicap, however disabling."[21]

A mechanistic approach has also been rejected

---

[19] The majority accepts General Motors' interpretation and claims its "decision is in accord with the interpretations given by most states of antidiscrimination statutes." The cases cited for this proposition, however, are ambiguous at best. *Sommers v Iowa Civil Rights Comm*, 337 NW2d 470 (Iowa, 1983), does not address the question except to refer to *Foods, Inc v Iowa Civil Rights Comm*, which reaches exactly the opposite conclusion of the majority. The Oregon Supreme Court in *Montgomery Ward v Bureau of Labor*, 280 Or 163, 167-168; 570 P2d 76 (1977), focused on the relationship between the handicap and the "reasonable demands of the job," because the unrelated requirement "tells us very little about the disability which justifies a refusal to employ." *Brown Co v Labor & Industry Review Comm*, 124 Wis 2d 560; 369 NW2d 735 (1985), dealt with the interpretation of a statute allowing discrimination if there is a reasonable relation between the job and handicap. Whether a reasonable relationship excludes a relationship between the handicap and peripheral responsibilities that could be accommodated without undue hardship is not clear. In *Treadwell*, n 16 *supra* at 475, the court said: "Once a plaintiff shows an employer denied him employment because of physical condition, the burden of persuasion shifts to the federal employer to show that the criteria used are job related and that plaintiff could not safely and efficiently perform the *essentials* of the job." (Emphasis supplied.)

[20] *Id.* at 400.

[21] 442 US 406.

when construing statutory provisions that mirror the Michigan legislation. The Iowa Supreme Court in *Foods, supra,* was asked to define the relationship of a statutory provision defining handicap as unrelated to the ability to do the job, and another provision requiring "accommodation to the . . . physical . . . limitations of an otherwise qualified handicapped applicant or employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its program."[22] The court agreed with the hearing officer's finding that the epileptic's physical condition "was related in a small way to her ability to do her job . . . [but] determined that a literal construction of rule 6.1 [handicap must be unrelated] would be inconsistent with Commission rules requiring an employer to make 'reasonable accommodation' . . . ."[23]

The duty to accommodate and the definition of handicap are related, but in a manner other than General Motors suggests. General Motors would not recognize a duty to accommodate unless the handicap is totally unrelated to the ability to perform the job. For those afflicted by handicaps related at least peripherally to every job, there is no protection, even if the handicappers would be perfectly capable of doing the job if peripheral responsibilities were transferred to another employee without undue hardship to the employer.

Through accommodation more handicaps become "unrelated" to the ability to perform the job. The two statutory provisions interact. There is a duty to accommodate unless the accommodation would impose an undue hardship. If without undue hardship the employer can modify the job in

[22] *Foods, supra* at 166, 167, n 2.
[23] *Id.* at 166.

such a way as would enable more handicappers to do the job, the objective of the act—integrating handicappers into society—is implemented.

The cause should be remanded to the circuit court to determine whether Carr's handicap relates only to peripheral responsibilities that can be accommodated without undue hardship to the employer.