879 F.2d 1326
 131 L.R.R.M. (BNA) 3022, 56 Fair
Empl.Prac.Cas. 1848,
50 Empl. Prac. Dec. P 39,139, 58 USLW 2064,
4 Indiv.Empl.Rts.Cas. 976
 Stanley SMOLAREK, Plaintiff-Appellant,
v.
CHRYSLER CORPORATION, Defendant-Appellee.
Ralph FLEMING, Plaintiff-Appellant,
v.
CHRYSLER CORPORATION, a Delaware Corporation; Louis Ebaldi
and Lyndon Verlyndon, jointly and severally,
Defendants-Appellees.
 Nos. 86-2074, 87-1387.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 22, 1989.
Decided July 12, 1989.
 
 Alan B. Posner (argued), Kelman, Loria, Downing, Schneider & Simpson, Detroit, Mich., for Ralph Fleming.
 William T. McLellan, Chrysler Corp., Steven B. Hantler, Joseph C. Marshall, III, Robert W. Powell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., Thomas Keinbaum (argued), for Chrysler Corp. et al.
 Jordan Rossen, General Counsel, Daniel W. Sherrick, Ass. General Counsel, Intern. Union, UAW, Detroit, Mich., amicus curiae.
 Monica Farris Linkner, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen and Bartnick, Richard E. Shaw (argued) Detroit, Mich., for Stanley Smolarek.
 William T. McLellan, Chrysler Corp., Robert W. Powell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., Thomas Keinbaum (argued), for Chrysler Corp.
 Before ENGEL, Chief Judge, KEITH, MERRITT, KENNEDY, MARTIN, JONES, KRUPANSKY, WELLFORD, MILBURN, GUY, NELSON, RYAN, BOGGS and NORRIS, Circuit Judges, and PECK, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 These combined cases present close and difficult questions regarding whether Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, preempts plaintiffs' actions claiming violations of Michigan's Handicappers' Civil Rights Act, M.C.L. Sec. 37.1101 et seq. (HCRA), and retaliatory discharge in violation of public policy relating to the filing of workers' compensation claims. In each case the district court found plaintiff's state cause of action preempted by Sec. 301 and dismissed the suit for failure to exhaust remedies. The Supreme Court's recent decision in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), holding that an action under Illinois law for the tort of retaliatory discharge for filing a workers' compensation claim was not preempted by Sec. 301, guides our decision in these cases.
 
 SMOLAREK
 
 2
 Smolarek was employed by Chrysler from 1953 until his lay off in 1984 and was a member of the United Automobile Workers (UAW).[1] Since an injury in 1955, Smolarek has suffered from a seizure disorder, which normally has been controlled by medications. In October 1984, he suffered a seizure at work and was absent from work for the following two weeks. When he returned to work, he was informed that no jobs consistent with the medical restrictions, under which he had worked for nearly thirty years, were available. In 1985 Smolarek again attempted to return to work and was told no work was available within his restrictions. Plaintiff alleges that at that time his foreman made the comment, "Stan, what if you fall down and other people in the plant see you and you are having a seizure. The other people could have a heart attack."
 
 
 3
 In April 1986, Smolarek filed a two count complaint in Michigan state court alleging discrimination under the HCRA and workers' compensation retaliation. He claimed that Chrysler discriminated against him by refusing to return him to his former position based on a handicap unrelated to his ability to perform his job duties, and that Chrysler also refused to reinstate him based on its fear that he might injure himself during a seizure on the job and file a workers' compensation claim. Smolarek did not allege any violation of the collective bargaining agreement between the UAW and Chrysler.
 
 
 4
 Chrysler removed the case to federal district court claiming federal question jurisdiction. Smolarek filed a motion to remand, which the district court denied on the grounds that Sec. 301 preempted Smolarek's claims. The district court then dismissed Smolarek's action because he had failed to exhaust his intra-union remedies before filing a Sec. 301 action. Smolarek now appeals the district court's denial of his motion to remand solely on the handicap discrimination issue.
 
 FLEMING
 
 5
 Chrysler hired Fleming, also a UAW member, in 1976 as a painter-glazer. In August 1984 Fleming was injured while leaving the Chrysler plant, and as a result he suffered some loss of balance, severe headaches, muscle spasms in his back, and nausea. Fleming continued to work with some medical restrictions on the kind of work he could do. Fleming claims that following his injury he was given job assignments inconsistent with his limitations. Fleming further contends that this "harassment" increased when he expressed his intent to file a workers' compensation claim. In October 1984, Fleming was laid off indefinitely. Chrysler claims his lay off was due to lack of work, as allowed by the collective bargaining agreement. Fleming claims that, while technically on lay off, he was told he was being dismissed.
 
 
 6
 In December 1984 Fleming grieved his lay off. This grievance was pursued to the third step of a four-step grievance procedure before Fleming voluntarily terminated his employment in May 1986 by relinquishing his recall rights as part of a settlement of his workers' compensation claim filed in February 1985.
 
 
 7
 Fleming filed a complaint in state court in July 1985, alleging violation of HCRA, discharge in retaliation for expressed intent to file a workers' compensation claim, breach of implied duty of good faith and fair dealing, and intentional interference with his quiet and peaceful pursuit of a lawful occupation. In August 1985 Chrysler removed the suit to federal district court. In October 1985 the district court denied Fleming's motion to remand on the grounds that the latter two counts of Fleming's complaint conferred original jurisdiction on the federal court.
 
 
 8
 Chrysler then filed a motion for summary judgment arguing that Fleming's claims were preempted by Sec. 301. Finding that all of Fleming's claims were preempted, the district court granted the motion and dismissed the case. Fleming appeals this dismissal only with regard to the HCRA and retaliatory discharge claims.
 
 Removal and Sec. 301 Preemption
 
 9
 Ordinarily, the question of removability to federal court under 28 U.S.C. Sec. 1441 turns upon application of the "well-pleaded complaint rule." Federal jurisdiction exists only when a plaintiff's properly pleaded complaint presents a federal question on its face.
 
 
 10
 The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-113, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid the federal jurisdiction by exclusive reliance on state law.
 
 
 11
 Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (footnote omitted); see also Oklahoma Tax Comm'n v. Graham, --- U.S. ----, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989) (per curiam) (discussing Caterpillar ). In the context of employment-related actions, however, a claim purportedly based solely on state law may, under appropriate circumstances, be removable because Sec. 301 of the LMRA has preempted that particular area of state law. In other words, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430. Thus, in the cases we now consider, the issues of federal preemption and removability largely merge; we must focus on whether plaintiffs' state-law claims are preempted by Sec. 301 so as to place them within the scope of the "complete preemption" corollary to the well-pleaded complaint rule.
 
 
 12
 In a series of cases, the Supreme Court has made clear that Sec. 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement. See Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); see also Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The purpose of this rule is to require that all claims raising issues of labor contract interpretation be decided according to the precepts of federal labor law in order to prevent inconsistent interpretations of the substantive provisions of collective bargaining agreements. Lucas Flour, 369 U.S. at 103, 82 S.Ct. at 576.
 
 
 13
 Thus, Lueck faithfully applied the principle of Sec. 301 preemption developed in Lucas Flour: if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state law principles as there are States) is pre-empted and federal labor-law principles--necessarily uniform throughout the nation--must be employed to resolve the dispute.
 
 
 14
 Lingle, 108 S.Ct. at 1881 (footnotes omitted).
 
 
 15
 In Allis-Chalmers v. Lueck, the Court expanded the preemptive reach of Sec. 301 to state-law tort claims. In Lueck the Court considered whether a state-law cause of action for bad faith handling of an insurance claim was preempted because the insurance plan provisions were included in a collective bargaining agreement. The Court found the state claim was preempted because an essential element of the tort (i.e., bad faith handling) required interpretation of the labor agreement regarding whether the plaintiff was due payments. Because the duty claimed to have been breached was "derive[d] from the rights and obligations established by the contract," the Court reasoned that "any attempt to assess liability here inevitably will involve contract interpretation." Id. 471 U.S. at 217, 218, 105 S.Ct. at 1914, 1914.
 
 
 16
 Although the Court limited its holding in Lueck to the specific facts of that case and made clear that not "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement ... necessarily is pre-empted by Sec. 301," id. at 220, 105 S.Ct. at 1915, the Court did attempt to define the preemptive scope of Sec. 301:
 
 
 17
 Our analysis must focus, then, on whether the [state-law cause of action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract.
 
 
 18
 Id. at 213, 105 S.Ct. at 1912.
 
 
 19
 At the same time, we must keep in mind that
 
 
 20
 Section 301 does not ... require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by a federal common law created by Sec. 301.... The Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by Sec. 301 or other provisions of the federal labor law." Allis-Chalmers, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985).
 
 
 21
 Caterpillar, 482 U.S. at 396 n. 10, 107 S.Ct. at 2432 n. 10 (emphasis added). See also Oklahoma Tax Comm'n v. Graham, --- U.S. ----, ----, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (per curiam). The Supreme Court has recently then reiterated what it stated earlier: "[E]ven under Sec. 301 we have never intimated that any action relating to a contract within the coverage of Sec. 301 arises exclusively under that section." Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust, 463 U.S. 1, 25 n. 28, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983); see also Caterpillar, 482 U.S. at 396 n. 10, 107 S.Ct. 2432 n. 10. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court." Caterpillar, 482 U.S. at 398, 107 S.Ct. at 2433 (footnote omitted) (emphasis added).
 
 
 22
 In its recent decision addressing asserted Sec. 301 preemption of state-law claims, the Supreme Court has attempted to clarify its language in Lueck regarding what kind of "independence" of state-law actions from collective bargaining agreements permits a finding of non-preemption. In Lingle, 108 S.Ct. 1877 (1988), the Court held that a unionized employee's state-law action based on Illinois's tort of retaliatory discharge for filing a workers' compensation claim was not preempted by Sec. 301 because "the state-law remedy ... is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for Sec. 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." 108 S.Ct. at 1882 (emphasis added) (footnote omitted). In so concluding, the Court rejected the contentions of the employer that the retaliatory discharge action was not independent because resolution of the state-law claim would implicate the same factual analysis as would a grievance brought under the CBA's "just cause" provision. Id. Thus, Lingle stands as the Court's latest word on Sec. 301's preemptive scope and, as such, will guide our decision in these cases.The Workers' Compensation/Retaliatory Discharge Claim
 
 
 23
 Fleming filed a state-law suit claiming that he was effectively discharged (technically, he was laid off) because of his expressed intention to file a workers' compensation claim. The district court found that Fleming's state-law claim was preempted by Sec. 301, and Chrysler argues that this decision was correct because the retaliatory discharge claim is inextricably intertwined with the terms of the collective bargaining agreement.
 
 
 24
 Fleming's claim is essentially the same as the claim that the Court addressed in Lingle. In order for a plaintiff to show retaliatory discharge under Michigan law, he must demonstrate that he was discharged by his employer in retaliation for the filing of a lawful claim for workers' compensation. See Sventko v. Kroger Co., 69 Mich.App. 644, 245 N.W.2d 151, 154 (1976). As the Court reasoned in Lingle: "Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." 108 S.Ct. at 1882. Consequently, here, as in Lingle, the state-law tort of retaliatory discharge creates rights independent of those established by the collective bargaining agreement and hence is not preempted by Sec. 301. See also Dougherty v. Parsec, Inc., 872 F.2d 766 (6th Cir.1989); Benton v. Kroger Co., 635 F.Supp. 56 (S.D.Tex.1986).
 
 
 25
 Whether Fleming's claim of retaliatory discharge under these circumstances will be deemed to state a proper cause of action in state court is a question we do not decide. It is a state claim, sufficiently set out as separate and apart from a collective bargaining contract claim, and thus avoids preemption. Chrysler has cited Wilson v. Acacia Park Cemetery, 162 Mich.App. 638, 413 N.W.2d 79 (1987), in support of its position, but applicability of Wilson is a question of state law to be considered on remand and not by us at this juncture.[2]
 
 
 26
 Fleming has exclusively relied on a state law retaliation claim without reference to the collective bargaining agreement. We conclude that this claim is not so "inextricably intertwined with consideration of the terms of the labor contract" that this claim is preempted under Sec. 301. Lueck, 471 U.S. at 213, 105 S.Ct. at 1912. This state law claim "can be resolved without interpreting the agreement itself...." Lingle, 108 S.Ct. at 1883.
 
 
 27
 Accordingly, we conclude that the district court erred in finding Sec. 301 preemption with regard to Fleming's retaliatory discharge claim.
 
 The Handicap Discrimination Claims
 
 28
 Smolarek and Fleming make the following argument against preemption of their handicap discrimination (HCRA) claims: The rights created by HCRA are in addition to and independent of any rights created by the UAW-Chrysler collective bargaining agreement. They argue that these rights exist regardless of the terms of the collective bargaining agreement and apply equally to union and nonunion employees. Furthermore, they assert that the individual rights established by HCRA are the type of "nonnegotiable" rights that Lueck exempted from Sec. 301 preemption and that cannot be bargained away by a collective bargaining unit. In summary, plaintiffs contend that success on the HCRA claim is not contingent on showing that any provision of the collective bargaining agreement was breached; therefore, the federal policy concern regarding interpretive uniformity is not implicated in these cases as set out in Lingle.
 
 
 29
 Chrysler counters these arguments by asserting that in these particular cases, evaluation of plaintiffs' HCRA claims will require consideration of collective bargaining agreement terms. The HCRA provisions applicable to Smolarek's and Fleming's claims require that an employer not "[d]ischarge or otherwise discriminate against an individual with respect to ... the terms, conditions, or privileges of employment," or "[l]imit, segregate, or classify an employee ... in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. Sec. 37.1202(1)(b), (c) (emphasis supplied). Thus, Chrysler asserts that, in the case of a union employee, the HCRA itself requires reference to the "terms, conditions, and privileges of employment"--matters defined by the collective bargaining agreement. Finally, Chrysler and amicus curiae, Michigan Manufacturers Association, argue that to allow union employees to pursue this type of HCRA claim could disrupt and/or by-pass the collective bargaining process and grievance procedures.
 
 
 30
 The Supreme Court in Lingle approved, in dicta, the Seventh Circuit's recognition that " 'Sec. 301 does not preempt state antidiscrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge.' " 108 S.Ct. at 1885 (quoting Lingle, 823 F.2d at 1046 n. 17). The Court went on to note that "the mere fact that a broad contractual protection against discriminatory--or retaliatory--discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." Id., 108 S.Ct. at 1885. Chrysler, however, seeks to distinguish HCRA from other state anti-discrimination statutes in that HCRA expressly recognizes that some handicaps are related to job performance and does not purport to protect persons with those handicaps. See Carr v. General Motors Corp., 425 Mich. 313, 389 N.W.2d 686, amended by 426 Mich. 1231, 393 N.W.2d 873 (1986) (holding that a plaintiff who concededly cannot perform the duties of a particular job and who claims that his employer must accommodate him does not state a claim under HCRA).
 
 
 31
 (1) Smolarek's HCRA Claim
 
 
 32
 On appeal from the district court's order denying his motion for remand, Smolarek specifically argues that Chrysler violated its duties under HCRA by refusing to return him "to his former position or another position consistent with his medical restrictions and has maintained [him] instead on a disability lay off indefinitely." Chrysler responds that this state-law claim is "substantially dependent" on interpretation of the collective bargaining agreement's provisions regarding an employee's right to reinstatement following disability leave and characterizes Smolarek's claim as asserting a breach of p 53 of the collective bargaining agreement, entitled "Reinstatement after Disability."
 
 
 33
 Under HCRA, an employee has the initial burden of proving that the employer violated the Act. Gloss v. General Motors Corp., 138 Mich.App. 281, 360 N.W.2d 596, 598 (1984). Smolarek might carry this burden by demonstrating that Chrysler had refused to reinstate him following his disability leave because of his seizure disorder which he first contends does not prevent or disqualify him from working at his former position. Id. 360 N.W.2d at 598, 599. The fact that the collective bargaining agreement contains a provision regarding reinstatement does not compel a finding of Sec. 301 preemption. "The mere fact that a broad contractual protection against discriminatory ... discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." Lingle, 108 S.Ct. at 1885, quoted in Ackerman v. Western Elec. Co., 860 F.2d 1514, 1517 (9th Cir.1988). Even if Smolarek may have been able to charge Chrysler under these circumstances with a violation of the collective bargaining agreement, he did not choose to do so and this does not mean that Sec. 301, even if applicable but not utilized by plaintiff, preempts the claim. See Caterpillar, 482 U.S. at 396, 107 S.Ct. at 2431. This is not a case in which the duty claimed to have been breached (i.e., the duty not to discriminate) arises solely from the collective bargaining agreement. Cf. International Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (duty to provide safe workplace derived solely from collective bargaining agreement). Nor is this a case in which evaluation of Chrysler's prima facie liability will necessarily require determination of whether the collective bargaining agreement has been breached. Cf. Lueck, 471 U.S. 202, 105 S.Ct. at 1906.
 
 
 34
 Chrysler may, in its own defense, assert that its treatment of Smolarek was allowed or required by the terms of the collective bargaining agreement and therefore was not based on Smolarek's handicap. The assertion of a defense requiring application of federal law, however, does not support removal to federal court:
 
 
 35
 It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a Sec. 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule --that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.
 
 
 36
 Caterpillar, 482 U.S. at 398-99, 107 S.Ct. at 2432-33 (emphasis added).
 
 
 37
 Chrysler and Judge Kennedy, in her separate opinion, seem to take the position that since plaintiffs may not be able to prevail on their separate HCRA claim under Michigan law to the extent they seek accommodation for their medical restrictions, see Carr v. General Motors and its progeny, then they must therefore be seeking a contract remedy. At oral argument, counsel for plaintiffs expressly disclaimed that they seek any collective bargaining agreement remedy, and we believe their respective complaints support this proposition. In any event, under our ruling, they are limited to pursuit of remedies sought outside the collective bargaining agreement context.
 
 
 38
 We find that Smolarek's complaint pleaded a cause of action based solely on Michigan's HCRA, a statute that Lingle suggests has not been completely preempted by Sec. 301. Accordingly, we conclude that the district court erred in denying Smolarek's motion for remand to state court.
 
 
 39
 Smolarek's complaint makes reference to his reporting to work "to his former position," and that "defendant has refused to return plaintiff to his former position" in violation of HCRA. It would therefore be necessary for plaintiff to establish under this allegation that Chrysler violated its HCRA duty, independent of the collective bargaining agreement, not to deprive him of his former job status "because of a handicap that is unrelated to the individual's [Smolarek's] ability to perform the duties of a particular job or position," which he had performed for many years satisfactorily. See MCLA Sec. 37.1202(1)(a). Only if found not capable of working at this former job would the court be concerned with Smolarek's alternative contention that he be placed in "another position consistent with his medical restrictions." Complaint, paragraph 16. That Chrysler may defend this latter alternative claim by reference to its responsibilities under the collective bargaining agreement in respect to reasonable accommodation of Smolarek's "medical restrictions" is, in our view, no basis to hold that Sec. 301 preemption is mandated under these circumstances. International Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, does not direct otherwise. In footnote 5 of that decision, the Court stated "Hechler argued below simply that the Union's duty of care arose from and was determined by the collective-bargaining agreement...." Id., 481 U.S. at 863 n. 5, 107 S.Ct. at 2168 n. 5. Smolarek makes no such waiver or abandonment of his theory and assertion of rights under Michigan's HCRA. Compare Hechler, 481 U.S. 862, 864 n. 5, 107 S.Ct. at 2169, n. 5, stating: ("[w]e decline to rule on the impact of hypothetical state law when the relevance of such law was neither presented to or passed upon by the courts below, nor presented to us in the response to the petition for certiorari") (emphasis added).
 
 
 40
 As the Supreme Court noted in Caterpillar, although the state court may need to determine whether Sec. 301 preempts Smolarek's claim in light of Chrysler's defense based on the collective bargaining agreement, this court need not consider that issue.[3] 482 U.S. at 398 n. 13, 107 S.Ct. at 2433 n. 13. It is sufficient that we find that Smolarek's well-pleaded complaint did not arise under federal law or under the collective bargaining agreement, and was not unextricably intertwined with the latter.
 
 
 41
 (2) Fleming's HCRA Claim
 
 
 42
 In contrast to Smolarek's appeal from an order denying remand, Fleming appeals directly from the district court's decision finding Sec. 301 preemption of Fleming's HCRA and retaliatory discharge claims. Therefore, we must consider the preemption issue, whether raised in Fleming's complaint or by Chrysler's defenses.
 
 
 43
 Fleming asserted in his complaint that Chrysler violated HCRA by failing to provide him with work consistent with his medical restrictions and by effectually terminating him because of his handicap. Chrysler may rely upon the collective bargaining agreement or the Michigan Carr rule that it is not called upon to accommodate Fleming if his handicap precludes him from working. See also DesJardins v. The Budd Co., 175 Mich.App. 599, 438 N.W.2d 622 (1988) (unpublished opinion). To establish prima facie liability under the HCRA, he must demonstrate (1) that Chrysler took adverse employment actions against him and (2) that the actions were motivated by his handicap. As in Lingle, these are "purely factual questions" relating to the conduct and motivation of the employer. "Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." 108 S.Ct. at 1882.
 
 
 44
 To defend against the HCRA charge, Chrysler must show that its actions were motivated by some factor other than Fleming's handicap. We recognize that Chrysler is likely to assert as its defense to Fleming's claim that it based its actions on the provisions of the labor agreement regarding reinstatement and accommodation. Even this defense, however, does not require a finding of preemption. In order to resolve the HCRA claim in light of this defense, a court need only decide whether Chrysler took actions adverse to Fleming because of his handicap or rather solely because Chrysler felt bound by the union agreement to take the actions or for some other legitimate reason. It is not necessary to decide at the outset whether or not Chrysler's interpretation of the agreement is correct as a matter of federal labor law. The question is a factual one: What was Chrysler's motivation? Under Lingle, therefore, Fleming's HCRA claim is sufficiently "independent" of the collective bargaining agreement to escape Sec. 301 preemption, for "resolution of the state-law claim does not require construing the collective-bargaining agreement." 108 S.Ct. at 1882 (emphasis added) (footnote omitted). Accordingly, we conclude under our understanding of Lingle that the district court erred in finding Fleming's HCRA claim preempted by Sec. 301.[4]
 
 
 45
 (3) Other Case Law Precedent
 
 
 46
 We decided only recently a comparable case involving a claim under the Michigan HCRA and a defendant automobile maker to reverse a district court judgment of Sec. 301 preemption and direct that plaintiff employee's claim be remanded to state court. DeRoseau v. Ford Motor Co., 866 F.2d 431 (6th Cir.1989). This result obtained despite the existence of potential collective bargaining agreement remedies. Holding Lingle determinative, another court reached the same result under a California handicap discrimination statute. Ackerman v. Western Elec. Co., Inc., 860 F.2d 1514 (9th Cir.1988). The same result was indicated as to a similar Oregon law in Miller v. AT & T Network Systems, 850 F.2d 543 (9th Cir.1988).[5] Other federal district courts in Michigan have reached the same result we have indicated here on the question of whether Sec. 301 or federal labor law preempts a state handicap claim. See Kazor v. General Motors, 585 F.Supp. 621 (E.D.Mich.1984); Turk v. General Motors, 637 F.Supp. 739 (E.D.Mich.1986); Nolte v. Blue Cross/Blue Shield of Mich., 651 F.Supp. 576 (E.D.Mich.1986) (holding Stephens v. Norfolk & Western Ry., 792 F.2d 576 (6th Cir.1986) and Maynard v. Revere Copper Prod., 773 F.2d 733 (6th Cir.1985) inapposite); Trombley v. Ford Motor Co., 666 F.Supp. 972 (E.D.Mich.1987). These cases were decided before Lingle and Caterpillar. For cases in jurisdictions other than Michigan, see Austin v. Northeast Tel. & Tel., 644 F.Supp. 763 (D.Mass.1986) and Elstner v. Southwestern Bell Tel. Co., 659 F.Supp. 1328, 1344 (S.D.Tex.1987). See also DeSoto v. Yellow Freight Systems, 861 F.2d 536 (9th Cir.1988) (reversing a prior decision of preemption under Sec. 301 in light of Lingle ).
 
 
 47
 In sum, based primarily upon Lingle and upon the other precedent discussed, we hold that because resolution of neither Fleming's retaliatory discharge claim nor his handicap discrimination claim would necessitate interpretation of a collective bargaining agreement, those claims are not preempted by Sec. 301. The judgment of the district court in Fleming's case is accordingly REVERSED, and the matter REMANDED for further proceedings. We further find that because Smolarek's complaint asserted solely a violation of Michigan's HCRA and presented no question of federal law, removal to federal court was improper in this case, and the district court erred in denying Smolarek's motion to remand. The order of the district court denying remand is REVERSED, and the case is ordered REMANDED to Michigan state court.
 
 
 48
 KENNEDY, Circuit Judge, concurring in part and dissenting in part.
 
 
 49
 I concur with the majority that Fleming's retaliatory discharge claim is not preempted by Sec. 301 because resolution of that claim does not require interpretation of the collective bargaining agreement; reversal of the District Court's judgment on the issue is therefore appropriate. I respectfully dissent, however, from the majority's failure to hold that certain aspects of plaintiffs' claims alleged to be under the Michigan Handicappers' Civil Rights Act (HCRA) are preempted by Sec. 301. On the basis of the pleadings, as well as looking beyond the pleadings, the standard followed in International Brotherhood of Electrical Workers, AFL-CIO v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), I would hold that Smolarek's claim is preempted to the extent that he claims a right to reinstatement to a position other than his former job; and that Fleming's claim is preempted to the extent that he claims a right beyond adaptive aids or devices to enable him to perform his former job. I would therefore find that removal jurisdiction exists based upon a federal question; I would AFFIRM the District Court's order denying Smolarek's motion to remand to Michigan state court, and would AFFIRM the District Court's grant of summary judgment to Chrysler with respect to the preempted aspects of Fleming's HCRA claim. I would REMAND the non-preempted portion of plaintiffs' claims to District Court to exercise its discretion whether to retain the remaining pendent state law claims or to remand the pendent claims to the state court.
 
 I. The Standard for Preemption
 
 50
 I agree with the majority on the applicable standard to determine preemption under Sec. 301. State law claims are preempted unless the state law "confers non-negotiable state-law rights ... independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) (emphasis added). See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988) (state-law remedy is independent if "resolution of the state-law claim does not require construing the collective bargaining agreement"). I disagree, however, on the majority's application of that standard to the plaintiffs' claims.
 
 II. The Pleadings
 
 51
 In general, the question of whether removal jurisdiction exists based upon a federal question is answered by reviewing the complaint as of the time of removal. See O'Halloran v. University of Washington, 856 F.2d 1375, 1379 (9th Cir.1988); Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1065 (9th Cir.1979); 14A Wright, Miller, & Cooper, Federal Practice and Procedure, Sec. 3721, at 213 & n. 79 (and cases cited therein).[1] The majority notes that plaintiffs' counsel expressly disclaimed any collective bargaining remedy at oral argument, and believes that plaintiffs' complaints support the disclaimer. See Majority Opinion at 1333.
 
 
 52
 With respect to plaintiffs' disclaimer, removal jurisdiction is not tested at the time of oral argument; rather, the Court must look to the face of the complaint at the time of removal. There is no indication in the record that plaintiffs attempted to amend their complaint at that time, and they may not effectively make such an amendment upon appellate review. The complaints and the substance of plaintiffs' claims do present a Sec. 301 federal question.
 
 
 53
 At the time of removal, Smolarek claimed a right to reinstatement to "his former position or another position consistent with his medical restrictions." Smolarek's Complaint, p 16, Jt App 5-6 (emphasis added). To the extent that Smolarek asks for reinstatement to another position, his claim is clearly preempted. There is no right independent of the collective bargaining agreement to be reinstated to another job consistent with one's medical disability under the HCRA. Carr v. General Motors Corp., 425 Mich. 313, 389 N.W.2d 686 (1986); DesJardins v. The Budd Co., 175 Mich.App. 599, 438 N.W.2d 622 (1988) (unpublished opinion).
 
 
 54
 Chrysler contends that not only is there no duty under HCRA to reinstate Smolarek to a another position, there is also no duty to reinstate him to his former position even if its reason for failing to do so was unrelated to his ability to perform the requirements of that job. The basis of this contention is that Chrysler had already accommodated Smolarek's epilepsy for many years under the collective bargaining agreement, and that he could not have performed the original requirements of his job as a tool and die maker without this contractual accommodation in the collective bargaining agreement.
 
 
 55
 This is a difficult question to answer. The Michigan Supreme Court has made it clear that an employer has no duty to accommodate an employee's medical restrictions that are related to his ability to perform the duties of a particular job. Carr, 425 Mich. 313, 389 N.W.2d 686. The HCRA prohibits discharge only for "a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position," M.C.L. Sec. 37.1202 (emphasis added). However, the Michigan courts have not addressed the precise question of whether the HCRA refers to an individual's ability to perform the job as originally defined, or to perform the standards of the job as redefined or "carved-out" for a particular employee.
 
 
 56
 The Michigan courts might hold that the proper reference point for Smolarek's ability to perform his former job is the "carved-out" position. Assuming that the Michigan courts so hold, Smolarek would have a claim under the HCRA if he was able to perform the "carved-out" job from which he was discharged, and the discharge was due to an unfounded fear of epileptics. I leave to another day whether the right under the HCRA would be parallel to, or, as I believe, "inextricably intertwined" with, the terms of the collective bargaining agreement. Resolution of this issue may depend on how the right is defined as a matter of state law. I make no attempt to resolve this question today, since it would merely be dicta in a dissent.
 
 
 57
 The majority fails to note that Fleming's claim is also preempted to the extent that he claims a right to reinstatement to another position. Such rights are "inextricably intertwined" with the contract, and must be pursued under Sec. 301. Fleming's complaint states that Chrysler breached its duties under the HCRA by "[f]ailing to suggest and/or implement reasonable accommodations so as to allow Plaintiff to work despite his physical determinable handicap in violation of MCLA Sec. 37.1101 et seq." Fleming's Complaint, Count II p 3(c), Jt App 12. Reviewing the complaint as of the time of removal, it is clear that Fleming was requesting an accommodation that has been held outside of HCRA's scope by Carr. This conclusion is also evident in Fleming's deposition testimony, in which he admits that he cannot perform the requirements of his former job without being accommodated. See Fleming Deposition, Jt App 177. The only source of Chrysler's duty to make "provisions [for] me to do my job," id., is the collective bargaining agreement. It is, however, possible to construe Fleming's claim as requesting "adaptive aids or devices ... thereby enabling [him] to perform the specific requirements of [his job as a painter-glazer]." M.C.L. Sec. 37.1202(1)(g). To that extent, his claim would not be preempted, and would be a pendent state-law claim analogous to Smolarek's "pretext" claim.
 
 III. Beyond the Pleadings
 
 58
 Even if this Court were not required to test removal jurisdiction as of the time the removal petition was filed, those aspects of Smolarek's and Fleming's claims beyond their former positions are preempted under the complete preemption doctrine. As explained by the Supreme Court in Hechler, 481 U.S. 851, 107 S.Ct. 2161, this Court must look beyond the pleadings to the entire claim, and determine whether or not it is based on the collective bargaining agreement, rather than on non-negotiable rights conferred under the HCRA.
 
 
 59
 In Hechler, the plaintiff argued that her union had breached its duty of care to ensure a safe workplace. She contended that the collective bargaining agreement was not implicated and that she was solely relying on state common law. In finding her claim preempted, the Supreme Court refused to accept her state-law argument on its face. Instead, the Court went beyond the pleadings and ascertained that although the employer had such a duty, the union's duty flowed solely from the collective bargaining agreement:
 
 
 60
 Respondent's allegations of negligence assume significance if--and only if--the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached. The collective bargaining agreement between the Union and Florida Power ... contain[s] provisions on safety and working requirements for electrical apprentices on which Hechler could try to base an argument that the Union assumed an implied duty of care. In order to determine the Union's tort liability, however, a court would have to ascertain, first, whether the collective bargaining agreement in fact placed an implied duty of care on the Union....
 
 
 61
 481 U.S. at 861-62, 107 S.Ct. at 2167 (footnote omitted). The plaintiff could not avoid Sec. 301 preemption by simply asserting that she had a state-law tort claim.
 
 
 62
 As in Hechler, Smolarek and Fleming ask us to wear blinders. Plaintiffs conceded during oral argument that their claim to accommodation to another position under the HCRA was eliminated by the Michigan Supreme Court's holding in Carr, 425 Mich. 313, 389 N.W.2d 686. They attempted to sidestep this apparent concession, however, through their "floor of rights" theory. Under this theory, they posit that although an employer need not provide for a right to reinstatement following a disability, if it does provide that right--either through the collective bargaining agreement or voluntarily--it must not discriminate in giving that right to all groups. We must, however, examine whether the "floor of rights" in this case derives from non-negotiable rights conferred by the HCRA, or if the genesis is negotiable rights, whether derived from the collective bargaining agreement or voluntary action.
 
 
 63
 Appellants analogize their "floor of rights" theory to race, sex, and age discrimination cases. The problem with this analogy is that race, sex, and age discrimination are classic examples of "nonnegotiable rights ... independent of any right established by contract." Allis-Chalmers, 471 U.S. at 213, 105 S.Ct. at 1912. These cases fall under the doctrine of complete parallelism, as explained by the Supreme Court in Lingle:
 
 
 64
 [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for Sec. 301 preemption purposes.
 
 
 65
 108 S.Ct. at 1883. In race, sex, and age cases, interpretation of the collective bargaining contract is unnecessary. The same case could be heard in a state tribunal considering the employer's motive for terminating the employee, or by an arbitrator considering whether the employer was justified under a "just cause" collective bargaining provision. The right to be free of race, sex, or age discrimination is independent of any ancillary right contained in a collective bargaining agreement.
 
 
 66
 Likewise, if an employee is terminated for a handicap unrelated to his ability to perform the functions of his job, interpretation of a collective bargaining agreement is unnecessary to his claim. The HCRA has provided a nonnegotiable right to be free of this type of discrimination. In contrast, however, the HCRA confers no right of accommodation. Accommodation is therefore a negotiable right provided either by contract, here the collective bargaining agreement, or voluntarily. To allow the extension of HCRA's non-discrimination language once negotiable rights are given would impermissibly bootstrap an accommodation requirement into the HCRA. Thus, the "floor of rights" argument simply restates that which is impermissible: "you are not required to give rights, i.e., accommodate employees, but once you do, you cannot discriminate with respect to that discrimination."
 
 
 67
 Although the majority feels otherwise, plaintiffs' position is not strengthened by the Ninth Circuit's finding that there was no Sec. 301 preemption in Ackerman v. Western Elec. Co., 860 F.2d 1514 (9th Cir.1988), and in Miller AT & T Network Systems, 850 F.2d 543 (9th Cir.1988). Those cases found that Ackerman's (California ) and Miller's (Oregon ) handicap discrimination claims were not preempted by Sec. 301 because they did not "require interpretation of a collective bargaining agreement." Ackerman, 860 F.2d at 1517. The key difference between these cases and the Michigan HCRA, however, is that the Oregon and California statutes require accommodation. Thus, accommodation is a non-negotiable right under Oregon and California law. Under the doctrine of parallelism, the state-law claim is not preempted because it is unnecessary to interpret the collective bargaining agreement--the right is provided by statute regardless of what the agreement may or may not provide.
 
 
 68
 Lastly, the majority cites a number of federal district court cases for the proposition that "Sec. 301 or federal labor law [does not] preempt[ ] a state handicap claim." Majority Opinion at 1335. The cited cases neither undermine, nor are they in conflict with, my position. Plaintiffs' claims in those cases were not preempted because they were not dependent on interpreting the collective bargaining agreement. See, e.g., Turk v. General Motors Corp., 637 F.Supp. 739, 740 n. 1 (E.D.Mich.1986) ("plaintiff's claims here do not in any way depend upon an interpretation of the collective bargaining agreement"); Nolte v. Blue Cross/Blue Shield of Michigan, 651 F.Supp. 576, 577 (plaintiff's HCRA claim not "inextricably intertwined with consideration of the terms of the labor contract"); Austin v. New England Telephone and Telegraph Co., 644 F.Supp. 763, 768 (D.Mass.1986) ("Here, none of Austin's state claims appear from the complaint to arise as a consequence of rights created in the collective bargaining agreement."). As the Court explains in Nolte, the analysis of whether rights are inextricably intertwined with the terms of the collective bargaining agreement "saves state civil rights laws, like [HCRA], from wholesale preemption." 651 F.Supp. at 577 (emphasis added).
 
 
 69
 Unlike the cases cited by the majority, Smolarek's and Fleming's claims to accommodation to other positions, regardless of the terminology used, derive solely from negotiable rights under the collective bargaining agreement. Such rights are not "independent of any right established by contract, [and are] inextricably intertwined with consideration of the terms of the labor contract," Allis-Chalmers, 471 U.S. at 213, 105 S.Ct. at 1912. The claims are therefore preempted under Sec. 301.
 
 IV.
 
 70
 Smolarek & Fleming v. Chrysler sets an overbroad precedent against finding Sec. 301 preemption when the collective bargaining agreement is clearly implicated. The danger is clear:
 
 
 71
 [A]s we explained in Lueck, "[t]he need to preserve the effectiveness of arbitration was one of the central reasons that underlay the Court's holding in Lucas Flour." 471 U.S., at 219, 105 S.Ct. at 1915. "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of federal labor contract law under Sec. 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." [citations omitted]. Today's decision should make clear that interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require construing collective-bargaining agreements.
 
 
 72
 Lingle, 108 S.Ct. at 1884 (footnote omitted).
 
 
 73
 I would AFFIRM the District Courts' finding of preemption to the extent that plaintiffs request reinstatement to other positions, and would REMAND the cases to the District Court on the issue of whether to retain the remaining pendent state-law claims.
 
 
 
 [1]
 The UAW has filed an amicus curiae brief in the Smolarek appeal arguing for reversal of the district court's judgment
 
 
 [2]
 Wilson does observe that claims arising under HCRA, like Title VII claims, are "directed toward enforcement of statutory rights, not contractual rights arising from the collective bargaining agreement." 162 Mich.App. 638, 413 N.W.2d at 81
 
 
 [3]
 Our conclusion that Fleming's HCRA claim is not preempted by Sec. 301, infra, however, suggests, but does not compel, the conclusion that a state court considering the issue in Smolarek's case might reach
 
 
 [4]
 This conclusion is not inconsistent with our decision in Maynard v. Revere Copper Products, Inc., 773 F.2d 733 (6th Cir.1985). There we found that an employee's claim for damages against his union for breach of the union's duty of fair representation, brought pursuant to a provision of Michigan's HCRA, was preempted by Sec. 301. The holding in Maynard was based on the fact that the HCRA fair representation provision "created no new rights for an employee and imposed no duty on a union not already clearly present under existing federal labor law." Id. at 735. Unlike the fair representation duty considered in Maynard, however, the duty not to discriminate based on handicap is not a duty already existing in the federal labor law. Therefore, the concerns regarding interpretative consistency that Maynard raised are not present in the instant appeal. McCall v. Chesapeake & Ohio Railway Co., 844 F.2d 294 (6th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), did not involve the question of Sec. 301 preemption
 
 
 [5]
 Ackerman did discuss the circumstance that under the California laws the employer might be directed to accommodate the claimant's handicap. The attempted distinction drawn between the statute and the Michigan law on accommodation is, in our view, immaterial. The employer's defense in Ackerman was the CBA provision "which broadly prohibits discrimination on the basis of race, color, religion, sex, age ... or because of handicap," and that interpretation and enforcement of that CBA clause was "inextricably intertwined" with the asserted state law handicap claim. Id. at 1517. This is the same argument made by Chrysler. Ackerman points out that it was a matter of affirmative defense to show whether the employee could perform the job duties "in a manner which does not endanger his or her health and safety or the health and safety of others." Id. at 1518. Chrysler, in the instant case, may raise a similar affirmative defense in state court under the Michigan statutory scheme. Miller was formulated before Lingle, and refers to Lingle only in n. 6 as confirming "the approach we have taken," and reaffirming "the holding of Allis-Chalmers." 850 F.2d at 551. Oregon's HCRA "declared discrimination based on physical handicap an unlawful employment practice" regardless of whether a CBA contained similar provision, as does the Michigan law. Id. at 550. Miller distinguished the district court's decision in Fleming reported at 659 F.Supp. 392 (E.D.Mich.1987)
 
 
 [1]
 For the exception to the general rule, see Libhart, 592 F.2d at 1066 (federal district court's judgment may be upheld even if no removal jurisdiction if case was tried on the merits)