Marvin C. IVERY, III; Antony D. Cook, Plaintiffs–Appellants,

v.

CHRYSLER CORPORATION; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, et al., Defendants–Appellees.

No. 00–2032.

United States Court of Appeals, Sixth Circuit.

Feb. 25, 2002.

Before RYAN, BOGGS, and DAUGHTREY, Circuit Judges.

PER CURIAM.

Plaintiffs–Appellants Marvin Ivery and Antony Cook appeal the grant of summary judgment dismissing their state-law claims of discrimination, retaliation, and fraud against Chrysler and United Auto Workers, Local 1700(UAW). The district court determined that Plaintiffs' claims were preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (hereafter § 301), and that their claims were barred by the 6–month statute of limitations imposed by that section. Be- cause we are convinced that Plaintiffs' claims are not preempted, we reverse the district court's judgment on the preemption issue. We nevertheless affirm the grant of summary judgment, because Plaintiffs have not made out their *prima facie* case for discrimination.

I

Marvin Ivery and Antony Cook each complain that they were improperly denied access, on the basis of race, to an apprenticeship program (the Program) jointly administered by United Auto Workers and Chrysler. Ivery and Cook are African– American.

Plaintiffs began working for Chrysler as hourly production workers in September 1994. They were represented by Defendant UAW Local 1700; the terms and conditions of their employment were governed by the National Collective Bargaining Agreement (CBA) between Chrysler and the UAW. Among other things, the CBA establishes a jointly administered Apprentice Program that regulates the placing of hourly employees into training programs for the skilled trades. Applicants to the Program submit an application, undergo standardized pencil and paper testing, and receive credit points for academic achievement. The applicants are ultimately ranked based on the number of points received (a minimum of 135 points is required), and are placed on a waiting list for placement into one of three trades that the potential apprentice selects.

In 1995, Ivery and Cook submitted applications for admission into the Program. Although both scored poorly initially, eventually their tests were rescored or retaken, such that they had sufficient points to be placed on the waiting list. However, they complain that the errors in tallying their scores were intentional, and that they were

intentionally prevented from joining the Program. They allege that this was due to race.

Both Cook and Ivery filed actions with the EEOC and NLRB, which were dismissed for failure to present evidence of discrimination. Ivery and Cook then filed this lawsuit against Chrysler. Chrysler removed the initial lawsuit to federal district court; the district court remanded it to state court. Plaintiffs then amended their lawsuit and added the United Auto Workers International Union as a defendant, as well as three UAW officials. UAW and Chrysler then removed Plaintiffs' amended lawsuit to federal court. The district court denied Plaintiffs' motion to remand, holding that their claims were preempted by § 301 of the Labor Management Relations Act, governing collective bargaining agreements. Chrysler and the UAW then moved for summary judgment. The district court granted Defendants' motions for summary judgment. Plaintiffs timely filed a notice of appeal.

## II

Review of a grant of summary judgment is *de novo*. *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992). Summary judgment is properly granted if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* at 581.

## A. Plaintiffs' Claims Are Not Preempted by § 301

■ In the context of employment-related actions, a claim based solely on state law may be preempted under § 301 of the Labor Management Relations Act. *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir.1989) (en banc). "[A]ny claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under

federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

■ Section 301 originally preempted state law claims arising from breach of contract (*i.e.*, the collective bargaining agreement); however, its scope has been expanded. The Supreme Court, in *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), enlarged the zone of preemption created by § 301 to include state-law tort claims, in which an essential element of the tort (in that case, bad faith handling) required interpretation of the labor agreement. *Id.* at 217.

The court in *Allis–Chalmers* set forth the following dividing line for determining which state torts were pre-empted:

> Our analysis must focus, then, on whether the [state-law cause of action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract.

*Id.* at 213.

As Plaintiffs indicate, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 ...." *Allis–Chalmers*, 471 U.S. at 211. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court attempted to clarify which state torts qualified as independent under the *Lueck* standard. The Court indicated that the Illinois tort of retaliatory discharge for filing a workers' compensation claim was not preempted by § 301 because it was independent: "resolution of the state-law claim does not require construing the collective-

bargaining agreement." *Id.* at 407. This, then, is the relevant standard.

The Sixth Circuit, in *Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir.1989) (en banc) applied this test to a similar set of facts: in that case, the plaintiff had brought a state claim alleging that Chrysler had fired him because he was handicapped, and because he had filed a workers' compensation suit. The court noted, quoting *Lingle:* "Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." *Smolarek,* 879 F.2d at 1331 (citations omitted). The *Smolarek* court therefore found that state-tort antidiscrimination claims are not preempted by § 301.

Further, the plaintiffs in *Smolarek* made a very similar argument to that made by Plaintiffs here: they argued that "the rights created by [the state statute] are in addition to and independent of any rights created by the [CBA]. They argue that these rights exist regardless of the terms of the [CBA] and apply equally to union and nonunion employees." *Smolarek,* 879 F.2d at 1331. Chrysler countered, as it does in the instant case, that evaluation of the plaintiffs' state-law claims would require consideration of the CBA terms. The court in *Smolarek* pointed out that the only reason that Chrysler had offered for why the CBA terms would have to be considered was that the CBA also forbade discrimination. *Ibid.*

Similarly, in *O'Shea v. The Detroit News,* 887 F.2d 683 (6th Cir.1989), the Sixth Circuit held that a state wrongful-death suit against an employer was not preempted merely because the employee and employer were both subject to a collective bargaining agreement. The suit was a straightforward wrongful-death action, in which the primary issues were whether or not the defendant-employer knew of the employee's heart condition, and whether or not the employer had placed the employee on a strenuous night shift in order to force him to retire. These were issues of fact and intention that were resolvable without any need to interpret the CBA. *Id.* at 684–85. The court stated:

> [Plaintiffs'] claim thus does not depend on any interpretation of the agreement; the relevant rights are completely outside the agreement. Even if the contract had a provision against retaliatory discharge, the state action is not preempted because the state right in question may be broader than the contract, as it is not dependent on it.

*Id.* at 686–87.

The *O'Shea* court pointed out that it was possible for the plaintiff in that case to prove her discrimination claim without any interpretation of the CBA. The defendant in that case had argued that the plaintiff could not show that her deceased husband had suffered an adverse action without showing that he had been demoted under the CBA. *Id.* at 686. The *O'Shea* court noted:

> [T]he right not to be discriminated against in employment decisions based on handicap or age is independent of the question of whether O'Shea was demoted or not. The plaintiff in this case may try to show, for example, that the midnight shift was undesirable and that older or handicapped employees were assigned to it more often than younger or non-handicapped ones.

*O'Shea,* 887 F.2d at 687.

Defendants assert, in effect, that while the CBAs in *Smolarek* and *O'Shea* ran parallel to the state-law analysis (each forbade discrimination but neither depended

on the other), interpretation of the CBA in the instant case intersects with the state-law claim. Interpretation of the CBA is necessary, they argue, not because the CBA covers the same turf as the state-law claim, but because the CBA will necessarily be implicated in resolution of the state-law claim.

From Defendants' perspective, the Plaintiffs here argue that a CBA-created program is being administered in a discriminatory manner. Defendants characterize Plaintiffs' claims as being both that the CBA's terms allowed the Defendants to discriminate (by adding extra points based on fuzzy academic criteria) and that the CBA was not correctly followed by Defendants in their cases. To show this, Defendants argue, Plaintiffs necessarily must have recourse to interpretation of the CBA: they cannot simply have their parallel and independent state-law claim determined by the court.

Defendants are not entirely incorrect; however, the central question is not whether some reference to the CBA must be made, but whether or not some element of the state cause of action necessarily requires an interpretation of the CBA.

Here, as in *O'Shea,* Plaintiffs could make their case entirely without reference to the CBA. Chrysler asserts that reference to the CBA is necessary to determine whether or not acceptance into the Program is a promotion. However, in *O'Shea* it was not necessary to determine whether or not the employer's actions constituted a *demotion* in order to maintain an age discrimination claim. *O'Shea,* 887 F.2d at 687. The cases are similar. As in *O'Shea,* Plaintiffs here could put on a case that white workers were overwhelmingly selected for entrance into the Program, that the Program was viewed by co-workers as being a promotion, and that Plaintiffs were discriminated against on the basis of race when they attempted to enter the Program. Nothing about the peculiar nature of the CBA-established Program, including the fact that the CBA established the criteria for entry, meaningfully differentiates this case from *Smolarek* and *O'Shea.* The plaintiffs in those cases were hired, worked, and fired under the provisions of the CBAs at issue. The provisions of the CBAs in *Smolarek* and *O'Shea* covered the issues at hand (both CBAs prohibited the type of discrimination alleged, for example).

Defendants rightly point out that the critical element is the independence of the state right, not its non-negotiability. As the Supreme Court in *Lingle* noted, "a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective bargaining agreement for its application. Such a remedy would be preempted by § 301." *Lingle,* 486 U.S. at 407 n. 7. Defendants characterize Plaintiffs' central argument as being that the selection criteria of the CBA were improperly applied in denying them admission into the Apprentice Program. This, Defendants assert, means that Plaintiffs' claims necessarily require interpretation of the CBA.

Under the *O'Shea* precedent, Defendants are incorrect. *O'Shea* clearly indicates that a state-created antidiscrimination tort claim is independent from the terms set forth in a CBA unless an element of the state tort is necessarily determined by an interpretation of the CBA. In other words, as in *O'Shea,* Plaintiffs here are alleging a garden-variety case of discrimination. The actions and intent of the employer are the key issues. As *O'Shea* pointed out, whether or not Defendants complied with the terms of the contract is utterly irrelevant. A defense under the contract provides no defense whatsoever to the state-law claim. Defendants could

have complied to the exact and precise letter of the CBA and still be subject to liability on the state-law claim; conversely, proving a violation of the contract would not necessarily establish the state-law claim. *O'Shea*, 887 F.2d at 687.

As the *O'Shea* court noted:

> [T]he question of whether or not the plaintiff was discriminated against was separate from any possible defense the employer might have under the contract. All the plaintiff has to allege is that an action was taken against him because of a motive impermissible under the Act. It is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did. The plaintiff's claim stands separate from this defense.

*O'Shea*, 887 F.2d at 687 (citations omitted). Thus, under *O'Shea*, the question of whether the Defendants complied with the contract is irrelevant to the question of whether or not Defendants discriminated against Plaintiffs.

Defendants raise another strong point when they note that when Plaintiffs included UAW as part of the suit, the issues became less clear. The reasoning is as follows: the only claims that could be asserted against UAW were those that were based on the CBA; the only duty that UAW owed to Plaintiffs was the duty of fair representation, created by the CBA.

Defendants argue that by the addition of the UAW, the lawsuit became a "hybrid" § 301 lawsuit, presenting claims against the employer for breach of the CBA, and against the union for breach of the duty of fair representation. *See, e.g., United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990); *Jones v. General Motors Corp.*, 939 F.2d 380 (6th Cir.1991).

This argument is unavailing. First, the inclusion of a second defendant did not alter the nature of Plaintiffs' claims against Chrysler. *Rawson* confirmed the rule that independent state-law tort claims are not preempted by § 301. *Rawson* merely found that the plaintiff miners in that case could not maintain a state-law negligence action where the duty upon which the negligence claim was premised was created by the CBA. *Rawson*, 495 U.S. at 372–73. As is demonstrated by *O'Shea* and *Smolarek*, state-law discrimination charges not premised upon duties created by the CBA are not preempted by § 301.

▮ Insofar as Plaintiffs' charges were asserted against the UAW based on the duty of fair representation set forth in the CBA, those claims are obviously preempted. However, it is not clear from Plaintiffs' Amended Complaint that their claims are based upon the CBA. Plaintiffs assert, in their amended complaint, that the Defendants (both Chrysler and UAW) had a duty pursuant to the Elliott–Larson Civil Rights Act and "the statutes and common law of the State of Michigan ... not to discriminate against the plaintiffs because of their race ...." Plaintiffs also allege that Defendants had a duty under the Elliott–Larson Civil Rights Act, and *independent of the CBA*, not to retaliate against Plaintiffs, and not to lie to them regarding the entrance criteria for the Program. Plaintiffs, well aware of the danger of preemption, have chosen to bring their fraud and misrepresentation claims in a form that is not preempted. The CBA is not the stated basis of these claims.

Finally, the UAW was added by Plaintiffs in response to Chrysler's motion to dismiss for failure to add the UAW as a defendant. The original suit by Plaintiffs was in the form of a straightforward claim

against their employer, Chrysler. It would be incongruous for Chrysler to be able to create a recharacterization of Plaintiffs' claims to their detriment, merely by forcing the addition of the UAW as a party. This exception would immediately swallow the rule set out in *Smolarek* and *O'Shea.*

For the above reasons, we reverse the district court judgment and hold that Plaintiffs' claims, with the exception of fraud claims based on the CBA,[1] are not preempted by § 301.

## B. Plaintiffs Presented Insufficient Evidence of Discrimination to Avoid Summary Judgment

■ Although we do not agree with the district court's determination on the preemption issue, we are convinced that summary judgment was proper, since Plaintiffs have not made out their *prima facie* case for racial discrimination. We may affirm a district court decision on any grounds properly before us. *Russ' Kwik Car Wash v. Marathon Petroleum Co.,* 772 F.2d 214 (6th Cir.1985).

■ Plaintiffs may choose to make out a direct or indirect case for discrimination. Plaintiffs can establish a *prima facie* case for discrimination if they show direct evidence of discriminatory intent (*e.g.,* an admission of discriminatory intent by the employer). Without direct evidence of discriminatory intent, Plaintiffs may establish a *prima facie* case for discrimination if they can show (1) that they were members of a protected class; (2) that they suffered an adverse employment action; (3) that they were qualified for the position; and

(4) that they were treated differently from similarly situated members of the unprotected class. *Alexander v. Local 496, Laborers' Int'l Union,* 177 F.3d 394, 402–03 (6th Cir.1999); *Mitchell,* 964 F.2d at 583.

Plaintiffs offer no direct evidence of discriminatory intent. Therefore, we analyze the sufficiency of their showing under the indirect evidence standard. Plaintiffs are members of a protected class. We may assume without deciding that Plaintiffs' initial denial of entrance into the Program was an adverse employment action, and that they were qualified for entry. However, neither Plaintiff has offered a comparably situated white individual who was admitted to the Apprentice Program under equivalent circumstances. Plaintiffs indicate an error in calculating the test scores of two white applicants to the Program. As Defendants point out, those instances were clerical error, were corrected when discovered, and did not lead to the admission of the applicants involved into the Program. These applicants are not valid non-minority comparables.

Plaintiffs also assert that Apprentice Committee administrator Barsotti gave his son points in areas that are not allowed by the written criteria. Even were this allegation credible, nepotism is not racism; Barsotti's son was not a valid non-minority candidate in comparable circumstances. For an action based on racial discrimination to be maintained, it should go without saying that the discrimination must be based on race.

Plaintiffs' case consists of arguing that they are African–American, and that they

---

1. Plaintiffs' complaint at Count III asserts a claim for fraud and misrepresentation, alleging that Chrysler and the UAW falsely represented to Plaintiffs that they needed to satisfy certain requirements before they would be admitted into the Apprenticeship Program.

To the degree that these claims are accurately characterized as being based on the CBA, they are preempted by § 301. To the extent that they are subsumed by Plaintiffs' general allegations regarding discrimination, the analysis in Part II.A, pp. 3–10, applies.

were not initially admitted into the Program. Without evidence of a white comparable applicant who was treated better, Plaintiffs have not made a sufficient showing to establish a *prima facie* case for discrimination. We therefore affirm the grant of summary judgment against Plaintiffs.

### III

For the foregoing reasons, the district court's judgment as to the preemption issue is REVERSED; however, we AFFIRM the grant of summary judgment on the grounds that Plaintiffs have failed to make out a *prima facie* case of discrimination.